**W. H. LIGHTLE, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12515.**

Criminal Court of Appeals of Oklahoma.

Feb. 5, 1958.

**714**

Earl Boyd Pierce, Muskogee, John P. Zimmerman, Kansas City, Mo., for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

PER CURIAM.

W. H. Lightle appeals from a conviction in the district court of Muskogee County, where he was charged with indecent exposure and by the court sentenced to pay a fine of $500.

The record discloses that defendant was the conductor on a work train for the Missouri Pacific Railroad and that on October 27, 1955, the date of the crime charged, the crew was working along the right of way in or near the town of Fort Gibson, in Muskogee County. Near the place where the crew was working was a school, and there was a path across the railroad right of way that was used by school children. A number of children testified that on the day in question as they crossed the railroad right of way they observed the defendant sitting on the back platform of a caboose reading a book, and that he exposed his privates and whistled. The children were from eleven to fourteen years of age, consisting of boys and girls. One witness was positive that the man they observed was not answering the call of nature or "excusing himself", as was said, but was "showing off". Though the witnesses had never seen the defendant previously, they each identified him.

The defendant did not testify, and offered no evidence.

The jury might have assessed a penalty of a fine of not less than Ten Dollars, nor more than One Thousand Dollars; or imprisonment for not less than thirty days nor more than ten years, or by both such fine and imprisonment. 21 O.S.1951 § 1021.

Defendant seeks a new trial based on the proposition that the court erred in refusing to grant a continuance and forcing him to trial, and for refusal to grant him a new trial.

If the motion for continuance had contained the information testified to by Earl Boyd Pierce, counsel for the defendant, on hearing of motion for new trial, we feel sure that the trial court without doubt would have granted a reasonable continuance, but actually the motion for continuance was based only on the allegations of counsel for the defendant that he was counsel in a number of stated civil cases that were set on a civil docket for November 15, 16, 20 and 23, 1956. We cannot say that the court, however, abused its discretion, based on such ground. Mott v. State, 94 Okl.Cr. 145, 232 P.2d 166; Taylor v. State, Okl.Cr., 286 P.2d 730.

A motion for new trial was filed November 19, 1956, and on November 23, 1956 sentence day was passed to December 28, 1956, and on that day continued until January 11, 1957. On January 10, 1957 there was filed an amended motion for new trial, based on newly discovered evidence, material to the defendant, and which it is alleged he could not with due diligence have discovered before trial, and that the facts in relation thereto were unknown to the defendant and his attorney until after the trial jury in the case was sworn.

On January 11, 1957 there was filed a verified and further amended motion for new trial. We quote pertinent portions:

"1. That said defendant is not guilty of the crime charged and is aggrieved by said verdict and that substantial rights of said defendant have been prejudiced.

"2. That said verdict is contrary to law and to the evidence.

"3. That said defendant has discovered new evidence, material to his defense, which with reasonable diligence could not have been discovered before the trial; that the facts in relation thereto were unknown to the defendant and his attorneys until after the trial jury in the case was sworn and said facts were not of record. That the facts constituting said newly discovered evidence are set forth in certain affidavits hereto attached and were not known to your defendant or his attorney prior to Dec. 28, 1956 and said facts were made known to defendant's attorney subsequent to the trial.

"That on the date said alleged offense was committed and approximately three or four weeks prior thereto, said defendant was engaged with his fellow employees in the service of his employer, the Missouri-Pacific Railroad Company, mending the roadbed and right of way of said company within the town limits of Fort Gibson, Oklahoma, and in the course of the service being performed said defendant and his fellow employees were in charge of a fully equipped work train on which was mounted a crane and other equipment used in the movement of dirt and debris; that approximately five days before his arrest in this case, one of the workmen operating a power crane, injured a peach tree along said right of way unintentionally; that this occurrence aroused the anger of one of the witnesses in this case, who at that time threatened the defendant and declared that the defendant would be arrested for his act.

"That in truth said defendant was arrested within approximately five days after said statement was made following the filing of the charge in this case; that said person who appeared as a witness against the defendant at the trial of this case was a male youngster living in the town of Fort Gibson, and shortly after said incident occurred, appeared along the railroad right of way near the caboose of said work train in company with other youngsters and on each occasion taunted and threatened said defendant; that because said persons, including the particular boy mentioned herein, were youngsters said defendant at the time, attached no significance to their conduct.

"That along the right of way mentioned, and in close proximity to same, were located numerous homes occupied by residents of Fort Gibson and that some of said homes were within fifty feet of the right of way of said railroad on which said defendant and his fellow employees were working; that not a single adult resident within the work area made complaint against said defendant and none appeared at the trial; that the alleged crime charged against said defendant in every respect appears completely without motive; that your defendant when granted a new trial will show conclusively the malice against him mentioned herein, and will disclose the physical circumstances of the environ wherein allegedly the offense was committed, and said defendant will produce credible witnesses to prove his innocence."

Attached to said motion were affidavits in support of the motion. That of T. D. Whitten reads as follows:

"T. D. Whitten of lawful age, after having been first duly sworn upon his oath deposes and says:

"That he is a citizen and resident of Caldwell Parish, Louisiana, residing at Kelly, Louisiana, that he is 48 years of age, that he is employed as a drag line operator by the Missouri Pacific Railroad Company and has been so employed for more than 11 years prior hereto, that he is married.

"Your affiant further states he is personally and intimately acquainted with W. H. Lightle the defendant in case No. 9541 Criminal, now pending in the district court of Muskogee

**716**

County, Oklahoma; that on or about the 22nd day of October, 1955, and for more than a week thereafter, affiant together with other employees of the Missouri Pacific Railroad including the defendant W. H. Lightle, were engaged in shoulder work along the right of way of said Company within the city limits of Fort Gibson, Oklahoma in connection with such work a fully equipped work train was being used and had been used prior to October 27th, 1955.

"Your affiant further states that he was operating one of the caterpillar type track drag line machines near and at the rear end of such work train and caboose moving dirt on said right of way; that in doing said work a peach tree near said right of way was unintentionally struck by a drag line operated by L. T. Maxwell and was completely knocked over and destroyed and your affiant further states that a colored woman came to the edge of the right of way and angrily and threateningly demanded damages for the destruction of the peach tree.

"Your affiant further states that he kept a close and vigilant lookout for anyone near said train w(h)ere he was working and especially near the drag line he was operating so that no one would be injured, that children did come near said drag line between the 22nd and 27th day of October 1955 and your affiant states that he did on at least one occasion find it necessary to run said children away from said drag line and that said children resented his actions and in their childish way taunted and threatened him.

"Your affiant further states that he distinctly remembers the days in question independently of the Missouri Pacific Railroad work sheets but has since the completion of said work seen said work sheets and refreshed his memory and your affiant affirmatively knows that he was working so near the caboose end of said work train on

which W. H. Lightle was the conductor that this affiant did at all times have a full view of the rear platform and steps of said caboose, that he did on more than one occasion see Mr. Lightle on the rear platform of said caboose reading his rule book and train orders.

"Your affiant further affirmatively states that at no time did W. H. Lightle indecently expose himself on or near the caboose or the steps or platform of said caboose of said work train and of this your affiant is positive for the reason that your affiant was present at all times doing his work at the rear of said train, and was in a position to see and know.

"Your affiant further states that he will, if called as a witness when a new trial is granted in this case, testify in open court to a jury to all of the matters and things herein above set forth.

"Your affiant further states that he is not related to the defendant W. H. Lightle either by blood or marriage."

And the affidavit of L. T. Maxwell reads as follows:

"L. T. Maxwell, of lawful age, after having been first duly sworn upon his oath deposes and says:

"That he is a citizen and resident of Pettis County, Missouri, residing at 1120 E. 11th Street, Sedalia, Missouri, that he is 62 years of age, that he is employed as a drag line operator by the Missouri Pacific Railroad Company and has been so employed for more than 33 years prior hereto, that he is married and is the father of 3 children same being one boy who is 20 years of age, and two girls whose ages are 27 and 32 years.

"Your affiant further states he is personally and intimately acquainted with W. H. Lightle the defendant in case No. 9541 Criminal, now pending in the district court of Muskogee County, Oklahoma; that on or about the 27th day of October 1955 affiant to-

gether with other employees of the Missouri Pacific Railroad including the defendant W. H. Lightle, were engaged in shoulder work along the right of way of said Company within the city limits of Fort Gibson, Oklahoma in connection with such work a fully equipped work train was being used and had been used prior to, to October 27th 1955.

"Your affiant further states that he was operating one of the caterpillar type track drag line machines on and over the right of way along side of said work train loading dirt upon said work train; that in doing said work a peach tree near said right of way was unintentionally struck by a large wooden mat being moved by the boom and a peach tree was completely knocked over and destroyed and your affiant further states that a colored woman came to the edge of the right of way and angrily and threateningly demanded damages for the destruction of the peach tree. Your affiant further states that he told the woman she should file her claim for damages to the tree with the claim agent of said railroad. This woman claimed this was a very valuable peach tree because it produced a large quantity of very good peaches each year. A short time thereafter W. H. Lightle, the conductor of said work train was arrested.

"Your affiant further states that he will, if called as a witness when a new trial is granted in this case, testify in open court to a jury to all of the matters and things hereinabove set forth.

"Your affiant further states that he is not related to the defendant, Mr. Lightle either by blood or marriage."

An affidavit of Sam Risenhoover reads:

"Comes now Sam Risenhoover of lawful age and after being duly sworn upon oath deposes and says:

"That he is 43 years of age and for the past ten years has been a resident of the town of Fort Gibson, Oklahoma;

that he is married and is the father of ten children, six of them between the ages of two and fifteen live with your affiant and his wife in their home which is situated on Railroad Street in the town of Fort Gibson in close proximity to the railroad right of way belonging to the Missouri-Pacific Railroad Company, and on which said railroad on October 27th, 1955, a work crew was doing certain shoulder work.

"That your affiant was at home on the said 27th day of October, 1955, during the noon hour of said day; that he particularly observed the work being done by this railroad crew, one of whom being W. H. Lightle, as your affiant is now informed; that your affiant's front porch is located within fifty feet of the railroad right of way, and that the caboose of said work train, your affiant was informed on said date, was stopped directly in front of his home; that neither your affiant nor any member of his family saw the defendant, W. H. Lightle, indecently expose himself or engage in any improper conduct; that so far as your affiant was able to see and observe all of the railroad employees were busy in the work they were doing in connection with shoulder work on the railroad right of way; that your affiant did see certain children who reside in the neighborhood about said work train apparently watching the excavating work then being done by said work crew, and at no time did any of said children either boy or girl, make any complaint or any of affiant's family see any alleged improper conduct by t.. defendant, W. H. Lightle.

"Your affiant further states that his home is located the closest to the position of the train caboose at the time and place mentioned when said alleged offense was committed, of all the houses in the community, and that his children and his wife and himself, either or all were going in and out of the house into his yard during all of the

time immediately before and during the noon hour and were in a position to see any illegal act committed by the defendant, but that neither the affiant or any member of his family observed any such act on the part of the defendant.

"Your affiant further states that he has no interest in this case and is not related to defendant by either blood or marriage, and makes this affidavit in the hope that justice will be done and in the firm conviction that the defendant is not guilty of the alleged crime filed against him.

"Your affiant further states that upon a new trial of this matter, if called as a witness he will testify under oath to a court and a jury to all the facts set forth in the affidavit."

An affidavit of E. O. Apple, reads:

"Comes now E. O. Apple, of lawful age, and after being first duly sworn upon oath, deposes and says:

"That he is a resident of Wagoner County, Oklahoma, residing in the city of Wagoner; that he is 37 years of age and is presently employed as a brakeman by the Missouri-Pacific Railroad Company, and has been in such employment for fifteen years prior hereto; that said affiant is married and is the father of three children, two girls and one boy, whose ages are fifteen, thirteen and three, respectively.

"Your affiant further states that he is personally and intimately acquainted with W. H. Lightle, the defendant in case Number 9514 criminal, now pending in the district court of Muskogee County, Oklahoma; that on or about the 27th day of October, 1955 your affiant together with other employees of the railroad, including the defendant, W. H. Lightle, were engaged in shoulder work along the right of way of said company within the city limits of Fort Gibson, Oklahoma, and in connection with such work a fully equipped work train was being used and had been so used prior to October 27, 1955.

"The affiant further states that he is fully familiar with the peach tree incident, wherein a peach tree was injured unintentionally by his fellow workman, Mr. W. W. Maxwell; that he well remembers that one boy, who your affiant is now informed was Denny Hughes, and that the said Denny Hughes, who later testified against the defendant, became angered over the incident of the injury of the peach tree, and in the presence of your affiant threatened to have all employees engaged in the work at the time and place mentioned, arrested. Your affiant states that he did not attach any significance to the youthful threats of the said Denny Hughes at that time.

"Your affiant further states that as a brakeman for said company and while engaged in said work at the time and place mentioned, it was a part of his duty to sit in the cupola of the caboose of said work train, and at other times to discharge the duties of a brakeman and thereby it became necessary for him to be upon the platform at the end of the caboose, and at the railroad track adjacent thereto; that on these several occasions that it was necessary for the work train to be used within the town of Fort Gibson, south of the Nash spur and particularly at the times and places the children who testified against the defendant came upon the premises of the railroad, and who, your affiant understands have testified that the said defendant, W. H. Lightle attracted their attention by whistling loud enough to be heard a distance of approximately fifty feet; your affiant states that at all times the said defendant and himself were in the area mentioned by said children, that your affiant was at said time, no more than fifteen feet away, and that at no time since he has been employed with, and working with the said W. H. Lightle, has he ever heard him whistle to anybody and that your affiant affirmatively states from his knowledge of

the physical surroundings, and of his close proximity to the said W. H. Lightle, that no such whistle took place and that whoever testified that such whistle did take place at the time and place mentioned, in their testimony, that such testimony was and is false; your affiant further states that his hearing is excellent and that the train was not moving when said alleged offense took place and that there were no other tracks upon which a train could move which could possibly otherwise cause noise and thus had such tracks been present, could have been available for another train to come by; but such not being the case, your affiant states without mental reservations that such whistle allegedly done, at no time took place or occurred.

"Your affiant further states that subsequent to the tree incident, certain of these children who your affiant understands testified against Mr. Lightle, came upon the premises of the railroad company and with taunts and threats molested the men including your affiant and Mr. Lightle; that such taunts and threats were made by one or more youngsters in a very unpleasant manner, but at such time neither your affiant nor Mr. Lightle took exception to the same. Your affiant further states that in order that there cannot be any mistake about the matter contained herein about the whistle, that at all times mentioned the windows to the cupola were open and that the back door to the caboose remained open at all times, and that defendant, Mr. Lightle was on the rear platform near said door.

"Your affiant further states that no commotion whatever took place in or around the train except the taunts and threats of the children in trespassing upon the company property.

"Your affiant further states that he will, if called as a witness when a new trial is granted in this case, testify in open court to a jury to all of the matters and things hereinabove set forth.

"Your affiant further states that he is not related to the defendant, Mr. Lightle either by blood or marriage."

In addition to the above, Earl Boyd Pierce, counsel for the defendant, testified (at the hearing on the motion for new trial):

"My name is Earl Boyd Pierce. I am a practicing attorney and have been engaged in the practice of my profession in this, in this county since June of 1928, with two exceptions, when I was in Washington with the Department of Justice in the Thirties, and during the course of the late war when I was absent from the county.

"That I am one of the attorneys representing W. H. Lightle. That at the time of his trial and prior thereto, I was his sole attorney. That at the time of my employment as such attorney Mr. Lightle was a complete stranger to me and was a stranger in the community of Fort Gibson where the alleged offense took place. I learned at the time of my employment that for more than ten years he'd been employed by the Missouri Pacific Railroad Company and at the time of the alleged offense was employed as a conductor on the work train which was engaged in doing certain shoulder work along the right of way in the town of Fort Gibson.

"That some time prior to the trial of this case, and I would say within a month prior to the trial, I had a conversation with the assistant county attorney of this county, a man by the name of L. W. Wiley, concerning the, concerning this case. Mr. Wiley in that conversation indicated to me that his office would be satisfied with respect to the disposition of this case if the defendant, Mr. Lightle, would pay a two hundred and fifty dollar fine and the costs. I stated to him that

I would contact my client who at that time was a resident and citizen of Kansas City, Missouri, provided the charges or—strike that—provided that he would recommend to the court that the charges would be reduced from the charge as filed to a charge in substance amounting to a disturbance of the peace. Mr. Wiley said he would do that.

"Accordingly, I notified my client, and in due time, within a week or ten days thereafter, and before the trial of the case Mr. Lightle came to my office ready and prepared to carry out the agreement. When I contacted Mr. Wiley by telephone on that occasion, Mr. Wiley reported that he could not go through with his agreement, stating that he had information in his file which he had obtained since the agreement indicating that perhaps my client had been convicted in the State of Arkansas on a similar offense, and he assigned that as the reason for going back on his agreement.

"However, he was not too positive that he had reached a final conclusion and stated to me at the time that there was more than two hundred cases on this criminal docket at that time that they did not even intend to put on the docket. I haven't checked the criminal docket of the court clerk, but I have reason to believe that the assertion of Mr. Wiley was correct.

"I advised Mr. Wiley that I had two or more serious civil damage suits on the ensuing docket and that no other member of my firm knew anything about the Lightle case and that I was depended upon to handle both the Lightle case and these civil damage suits. Mr. Wiley understood that. Yet notwithstanding that fact, by what he didn't say, what he left unsaid, and by his conversation to me on the 'phone, he led me to believe that some disposition beneficial to my client would be made of the case, and I relied on that information as I'd received it and on

.the eleventh hour prior to the trial I presented to your honor, who now is on the bench this morning and who was the trial judge in that case, a motion for a new trial—strike that—a motion for a continuance, which your honor read in his chambers, a copy of which I have before me, and which states in substance the grounds and the reasons for the request for the continuance and assigning therein the fact that certain civil cases in which I was engaged as counsel were on the docket and were to be tried on the dates set forth in that, in the first paragraph of that motion; one of which was the Malone v. Morrison case, No. 30,888, which was tried. Another case was the case of Johnson v. Carter, No. 39,795, a damage suit which was tried, and there was another case tried by the name of Shipley—I don't think I even included it in here—the Shipley case was tried in the other courtroom before Judge Summers, as I recall.

"Further, at the moment the matter was presented to this court on the request for continuance, Mr. Wiley and I believe his boss indicated to this court that they were not agreeable to any continuance and that they wanted the case tried, and the impression made to the court in my presence at that time was such that I honestly felt as a lawyer that if I insisted upon my motion under the conditions then existing, that it would be an imposition upon the court, and that I did not care to indulge in. I stated to the court that I would try the case although I had not subpoenaed any witnesses and the only witness I'd have if we used him at all would be the defendant. That I would rely upon the failure of the State to properly identify the defendant.

"I wish to state that but for the conduct, conversation, and promises of the assistant county attorney of this county, so named, and had I not been lulled into security and misled, I would have produced the witnesses who are

now willing to come and testify and whose affidavits we have. And in my humble judgment as a lawyer, had they so testified, the jury would have never convicted Mr. Lightle. These witnesses are all reputable people. Some of them are fellow employees who are acquainted with all the circumstances under which these absurd charges were filed.

"With respect to diligence, I think under the circumstances that I did everything that a lawyer could have been expected to do who had knowledge of the facts and circumstances of the conversations which I had with the assistant county attorney then in office. I had a right to believe him when he told me that he had over two hundred cases on this docket that he didn't intend to put on the docket at all, some of them serious cases. And they were not put on the docket; and if he says there's two hundred or two hundred fifty, I think I have a right to rely on them or did rely on that fact or that statement of the fact; and by reason of his other statements pertaining to the case, in which I was interested, I was lulled into security and honestly believed that he would never at this term, this past term of court, try this case. But being surprised by his conduct, his attitude before the court in your honor's chambers, his obstinate attitude to agreeing to a continuance prompted me to believe that if I had urged the court and persisted in urging the court in the matter (not knowing what the court would have done) but had I gone any further than I did, I would have considered it to have been an imposition upon this court, and I don't think this court or any court expects an attorney to presume upon a trial judge to that extent under any circumstances.

"I'm willing to submit to cross-examination, Mr. Leeds.

"By Mr. Leeds: Q. One thing I didn't understand, Mr. Pierce: Is this a part of your motion for a new trial here this morning?

"A. Yes, and my testimony was for the purpose of meeting the requirements of the law with respect to the absolute necessity of showing diligence, either on the part of the defendant or his attorney. And in that connection I will state that my client absolutely relied upon me. He was in Kansas City at work, and I was here; and it was my duty to do what should have been done, and but for what I've testified to having taken place would have been done, and which we're now prepared to show the court the materiality of the testimony. Is there anything further, Mr. Leeds?

"Mr. Leeds: No, sir." Witness excused.

■ The general rule is that a motion for new trial upon the ground of newly discovered evidence is addressed to the trial court's sound discretion, and its ruling thereon will not be disturbed on appeal except for an abuse of discretion, the presumption being that the discretion was properly exercised. Parkey v. State, 59 Okl.Cr. 45, 56 P.2d 144; Dollie v. State, Okl.Cr., 316 P.2d 208.

■ To justify the granting of a new trial there must be reasonable probability that, if the evidence had been introduced, a different result would have been reached. If cumulative or for impeachment such would not be sufficient. Due diligence must be shown. See England v. State, Okl.Cr., 276 P.2d 270 and cases cited for the principles; 22 O.S.1951 § 952 subd. 7.

The difficult point presented is whether or not due diligence was used in investigating the case and discovering the evidence it is now sought to present if a new trial would be granted. Ordinarily, the time lapsing between the filing of the charge and the arraignment in the district court was

ample for the preparation of defendant's defense. However, the defendant and the railroad laborers were on a work train and there was no fixed abode; they were here and there and were gone. The defendant was a resident of Missouri. Two of the proposed witnesses are residents of Oklahoma; one of Louisiana and one of Missouri. Still, even such fact, in our opinion, would not justify the reversal of this case, even though this court is anxious that all persons charged with crime have every opportunity to fully present their defense. Orderly procedural standards must be maintained. But here counsel for the defendant on motion for new trial testified to an agreement he had with the assistant county attorney, who agreed to recommend a fine of $250, and to change the charge to disturbing the peace, and further stated that there were over two hundred cases on his docket and that he did not intend putting the within case on the docket at all, other cases being more serious. Counsel for defendant claims that he was lulled into security and misled. The State did not deny this, but decided to try the case by reason of information they had been furnished concerning the defendant, which we have no way of knowing whether it was true or not, and apparently defendant was not promptly notified of the change in attitude on the part of the State. So that defendant was unable to have a witness present in his defense. And counsel cross-examination of State's witnesses discloses that he had no information of trouble between certain of the witnesses, and the employees of the railroad. Defendant would forego paying a relatively small fine and go to the expense of getting witnesses from distant points and risk a jail or penitentiary sentence, which is understandable where an accused denies his guilt and would risk much to clear himself of a charge. The charge is most serious and persons guilty of such conduct should be severely punished, and the finding of guilt forever condemns them in the eyes of society as of low moral character, and of a moronic type. This is too serious a matter to, under the

circumstances, deprive the accused of the opportunity of prosecuting the defense he has shown he can submit.

The case is reversed and remanded for a new trial.